Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7414 | **DATE** | 5/2/2003 |
| **CASE TITLE** | Thomas Mattson vs. Caterpillar, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant Caterpillar, Inc's motion for summary judgment [14-1] is granted and plaintiff Thomas Mattson's motion for summary judgment as to liability [16-1] is denied. This is a final and appealable order. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 0 5 2003 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 5/2/2003 date mailed notice | |
| KF | courtroom deputy's initials | 03 MAY -2 PM 4:09 | KF mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

DOCKETED
MAY 05 2003

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS MATTSON, )
)
    Plaintiff, )
)
    v. ) No. 01 C 7414
)
CATERPILLAR INC., ) Mag. Judge Michael T. Mason
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Thomas Mattson, alleges that defendant, Caterpillar, Inc., subjected him to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). Before us are the parties' cross-motions for summary judgment on both counts. For the following reasons, this Court grants Caterpillar's motion and denies Mattson's motion.

## BACKGROUND

Both of the parties filed statements of undisputed facts pursuant to Local Rule 56.1 wherein they agreed to the majority of the facts. The parties' disputes for the most part concern the proper interpretation of such facts. Thus, the following facts are undisputed except where noted.

Caterpillar is a corporation which is and for many years has been doing business in the State of Illinois, operating a number of manufacturing facilities involved in the production of earth-moving equipment, engines and generators. At all relevant times, Caterpillar has employed at least 15 employees in the State of Illinois, and is an

"employer" as defined by 42 U.S.C. § 2000e(b).

Mattson began his employment with Caterpillar in 1971. From April 1999 until his termination on December 16, 1999, Mattson served as a third-shift electrician in Building BB of Caterpillar's Mossville, Illinois facility. Mattson's responsibility in this position was to repair electrical problems that occurred in the facility's engine-testing equipment (i.e., the "test cells") area. The test cell area is a noisy area where employees wear earplugs and have to raise their voices and speak directly into other persons' ears to be heard. Mattson was assisted in his responsibilities by a more senior electrician, Paul Hart. Mattson's direct supervisor was Lee Gill.

During this same period, Beth Cone served as the foreman of the test cell area for the third shift. Although Cone was not Mattson's direct supervisor, she issued directions to him that he was expected to obey. On one occasion, Cone complained to Gill that she had observed Mattson sleeping in one of the electricians' cells. Cone also believed that Mattson was unresponsive to her requests. On approximately April 14, 1999, the tension between Cone and some of the electricians boiled over. On this day, Cone and Hart had a loud discussion over an incident in which Mattson and Hart had improperly left a test cell without indicating that the cell was still under repair. During that discussion, Hart became angry and took two steps towards Cone before Mattson stepped in and restrained him. The following Monday, Hart's pending transfer to another building came through, and Hart was transferred. After this time, Cone's primary point of contact when she needed an electrician was Mattson.

Following the altercation, on approximately April 19, 1999, maintenance supervisor Jerry Hoven held a meeting to discuss the problems that had been occurring

in the maintenance and test cell areas. Mattson, Gill, and test cell mechanics Wayne Minor, Denny Pemberton, and Steve Snyder attended the meeting. During the meeting, Mattson and other employees told Hoven that they were concerned about "physical contact" with Cone. Specifically, Mattson complained that Cone had deliberately pressed her breast against his arm from behind.

Around this same time, Mattson also complained to Gill of unwelcome sexual behavior towards him by Cone. Specifically, Mattson complained that Cone had reached for some papers near his crotch.[1] Pemberton and Snyder made similar complaints; specifically, they complained that Cone had gotten in the habit of standing too close to them and positioning her body in a manner that caused them to run into her.[2]

As a result of these complaints, Caterpillar assigned its EEO Coordinator, Lynda White, to conduct an investigation. White conducted interviews with Mattson, Cone, and Gill, and employees Snyder, Pemberton, and Minor. During her interview with Mattson, Mattson stated again that Cone's breast had touched his arm and that she had reached around him to get some papers on a clipboard. Mattson told White, however, that he did not know if Cone's breast had touched him "on purpose" and did

---

[1] Caterpillar contends that Mattson complained that Cone had reached for some papers on a clipboard near his crotch without touching him. Caterpillar also contends that Mattson complained only that Cone's breast had touched his arm (and thus not necessarily deliberately). We find these disputes to be minor, and will accept Mattson's version of the facts on these issues for now.

[2] Caterpillar disputes that Pemberton's or Snyder's complaints were "similar" to Mattson's. In addition, Caterpillar denies that Cone had a "habit" of standing too close and positioning her body in such manner. Again, we will accept Mattson's version of the facts on these issues for now.

-3-

not believe Cone was attracted to him. Mattson also told White that there had been "nothing anyone could do right" for Cone during the previous week, and that he wanted to either be transferred or have Cone transferred.

White concluded her investigation with a report dated April 30, 1999 in which she found that no sexual harassment had occurred, and recommended that a "matter of record" be placed in Mattson's personnel file.[3] White's recommendation was based on her conclusions that Mattson had exaggerated his complaint against Cone and that Mattson, Minor and Snyder had conspired to get Cone in trouble before they got in trouble, themselves. In reaching these conclusions, White noted that Mattson's account as to the level of physical contact between he and Cone had been contradictory, with Mattson initially stating that there was a lot of physical contact between them, but later admitting that the contact had occurred only once and was probably inadvertent. In contrast, White found Cone to have been truthful, and noted that there were no contradictions in her account.

White reviewed her findings with Human Resources Manager Norman Ricca. At Ricca's request, on approximately May 10, 1999, Caterpillar issued Mattson, as well as Snyder and Minor, each a "matter of record" warning them that false accusations of sexual harassment could lead to disciplinary action including discharge. After receiving the matter of record, Mattson understood that he could be disciplined for making charges of sexual harassment that the Company found to have no reasonable basis.

---

[3] A "matter of record" is a Caterpillar personnel form that puts an employee on notice that a problem has occurred. Caterpillar does not consider it to be an indication of discipline.

Caterpillar also counseled Cone to be careful as to how close she stood around people and to make sure that she had their attention when approaching them. Thereafter, Cone changed her behavior when speaking to employees by carrying a clipboard and holding it over her chest.[4]

Three months later, on approximately August 20, 1999, Mattson filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). In his charge, Mattson alleged that he had been subject to sexual harassment and retaliation. Mattson's sexual harassment allegations were based on: (1) the single instance in which Cone's breast had touched him, and (2) Cone's act of reaching around Mattson to get a clipboard. Mattson's retaliation allegations were based on: (1) Caterpillar's denial of his request for a transfer, and (2) Mattson's receipt of a disciplinary warning (the matter of record) after he complained of the alleged sexual harassment.

Caterpillar assigned White's successor, Christine Troglio, to investigate and respond to Mattson's charge. During the course of her investigation, Troglio reviewed the investigation files from Lynda White's previous investigation and interviewed employee Chuck Hollis, as well as several other employees. Hollis, in his interview, stated that Mattson had informed him that the purpose behind the sexual harassment complaint was to have Cone removed from the test cell area due to a disagreement between Cone and several of the hourly employees. Hollis acknowledged that Mattson had not explicitly admitted to him that the complaint was false, but stated that he (Hollis)

---

[4] Mattson was not granted his request for a transfer.

believed it to be false. Based on her investigation, Troglio concluded that Cone did not commit any sexual harassment and that Mattson had not brought his charge in good faith. Troglio further concluded that Mattson was acting in a retaliatory manner by approaching employees to join him to try to get Cone in trouble.

Troglio then consulted various members of Caterpillar's management, including Ricca, regarding her findings and what type of discipline to impose. Shortly thereafter, Troglio obtained an affidavit from Hollis in which Hollis stated that Mattson had told him that his goal had been to get Cone "out of here any way possible." The affidavit confirmed Troglio's and Ricca's suspicions that Mattson had filed the sexual harassment complaints in an attempt to get rid of Cone. Ricca determined that Mattson should be discharged for this misconduct. He decided, however, that the discharge should be made immediately after the IDHR fact-finding conference scheduled for December 16, 1999 in order to avoid giving the impression to the IDHR investigator that the decision was meant to intimidate or coerce Mattson.

At the fact-finding conference on December 16, 1999, Mattson withdrew his allegations of sexual harassment but maintained his allegations of retaliation. Caterpillar discharged Mattson that same day, December 16, 1999, upon his arrival to the plant that evening to begin his shift.

## ANALYSIS

I. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This standard of review applies to cross motions for summary judgment. International Brotherhood of Electrical Workers v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002). We must view the admissible evidence supporting the motion in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant must show through specific evidence that a triable issue of fact remains on the issues on which he bears the burden of proof at trial. See Celotex, 477 U.S. at 324. A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Insolia v. Phillip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000). It is with these standards in mind that we address the instant motions.

II. Sexual Harassment

We begin this part of our analysis by stating, as an initial matter, that it is not entirely clear whether Mattson is even intending to allege a claim of sexual harassment. Indeed, in his memorandum in support of his motion for summary judgment, Mattson states that his "First Amended Complaint consists of *one count* . . . . that Caterpillar violated the anti-retaliation provisions of Section 704(a) of Title VII" (emphasis added). Mattson also states, in his reply brief in support of his motion for summary judgment, that he is "not here asking this Court to find that Caterpillar or Beth Cone, in fact, committed unlawful sex harassment or, in fact, had a sexually hostile atmosphere." And, even in his Amended Complaint -- with the exception of the initial paragraph -- Mattson appears to allege only a single claim of retaliation. For the sake of completeness, however, we will address Mattson's claim of sexual harassment to the

extent such claim is being alleged.

Caterpillar argues that Mattson's sexual harassment claim fails for two reasons: first, because Mattson formally withdrew the sexual harassment component of his underlying administrative charge and a plaintiff cannot plead allegations beyond the scope of the allegations contained in his administrative charge; and, second, because the claim as alleged fails to constitute actionable sexual harassment.

We will address Caterpillar's second argument first. To prevail on a claim of sexual harassment based on a hostile work environment, Mattson must establish that: (1) he was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at him because of his sex; and (4) there is a basis for employer liability. *Rhodes v. Illinois Dep't of Transp.*, 243 F. Supp. 2d 810, 819 (N.D. Ill. 2003). Here, we agree that Mattson's claim of sexual harassment fails because the conduct Mattson complained of is not sufficiently severe or pervasive. Mattson complained only that Cone's breast touched him (which he later admitted may have been inadvertent), and that she reached around him to get some papers on a clipboard (which he later testified was without touching him). He further admitted that he did not believe Cone was attracted to him. This is insufficient to establish a hostile work environment. *See, e.g., Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (no hostile environment where coworkers teased plaintiff, stared at her breasts, touched her buttocks twice, and poked at her). Because we find that Mattson's claim of sexual harassment fails to constitute actionable sexual harassment, we need not address Caterpillar's other argument that

-8-

Mattson's claim fails because he withdrew the sexual harassment component of his administrative charge prior to filing suit. We therefore grant summary judgement in favor of Caterpillar with respect to Mattson's complaint of sexual harassment.

III. Retaliation

Next, we turn to Mattson's contention that Caterpillar retaliated against him. Mattson's retaliation complaint is two-fold: he contends that he was retaliated against for filing an internal complaint of harassment as well as for filing an IDHR charge wherein he alleged harassment and retaliation. Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. See 42 U.S.C. § 2000e-3(a). To demonstrate that an employer has violated this provision of Title VII, an employee may present either direct or indirect evidence of the employer's retaliatory intent. Direct evidence is frequently non-existent in these cases. As such, most employees attempt to satisfy their burden through the indirect method of proof.

Because Mattson has no direct evidence of retaliation, he must proceed under the *McDonnell Douglas* indirect method of proof.[5] Under the indirect methodology, Mattson must first establish a *prima facie* case that his employer retaliated against him. Specifically, Mattson must demonstrate that: (1) he engaged in statutorily protected

---

[5] Mattson argues that he has provided direct evidence of retaliation, namely, Ricca's statement that the discharge was timed in conjunction with the IDHR fact-finding conference. We disagree that this constitutes "direct evidence" of retaliation, and find that it is more appropriately categorized as indirect or circumstantial evidence of retaliation.

activity; (2) he was performing his job satisfactorily at the time of the adverse employment action; (3) he was subject to a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Davis v. Chicago Transit Auth.*, No. 01 C 4782, 2003 WL 1193274 at *8 (N.D. Ill. Mar. 13, 2003) (slip copy). Failure to satisfy any element of the *prima facie* case is fatal to Mattson's claim. If, however, Mattson is successful in proving his *prima facie* case, the burden of production shifts to Caterpillar to articulate a legitimate, noninvidious reason for the adverse employment action. *Hilt-Dyson*, 282 F.3d at 465. If Caterpillar is able to articulate such a reason, the burden of production shifts back to Mattson to demonstrate the pretextual nature of the proffered reason. *Id.* If Mattson is unable to establish such pretext, his retaliation claim cannot survive summary judgment. *Id.*

1.

Mattson's first contention is that he was retaliated against when he was issued a matter of record and denied his request for a transfer after he filed an internal complaint of harassment. As mentioned above, because Mattson does not have any direct evidence of retaliatory intent, he must proceed under the indirect method of proof. We begin by focusing on the third element of Mattson's *prima facie* case, specifically, whether the matter of record and denial of transfer constitute materially adverse employment actions.

A materially adverse action must be "more disruptive than a mere inconvenience

or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). Rather, a materially adverse action may include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*; *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999) (citations omitted). The Seventh Circuit has emphasized that while an adverse employment action need not be quantifiable in terms of pay or benefits, "not everything that makes an employee unhappy is an actionable adverse action." *Hilt-Dyson*, 282 F.3d at 466 (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

Upon reviewing the record, we conclude that neither the placement of the matter of record in Mattson's personnel file nor the denial of Mattson's request for a transfer constitutes an adverse employment action. With respect to the matter of record, it is undisputed that Caterpillar does not consider a matter of record to be an indication of discipline. As White testified, a matter of record is "not always negative" and the purpose of one is to simply "put someone on notice." (White Dep. at 25-26) This is not enough to constitute a materially adverse employment action. *See Ribando*, 200 F.3d at 511 (placement of "letter of concern or counseling" in personnel file fails to constitute adverse action). As for Caterpillar's denial of Mattson's request for a transfer, we note, first, that Mattson provided very little, if any, evidence regarding the impact that Caterpillar's denial of his request for a transfer had on him. Mattson did not assert that the transfer, if granted, would have been beneficial to him. Nor did he even explain what the transfer would have entailed. Mattson seemed to want the Court to simply assume that the denial of his

request for a transfer was a materially adverse action and more than a "mere inconvenience." We decline to make such assumption. Rather, we find that Mattson has failed to establish that he suffered a materially adverse employment action when he was denied his request for a transfer. Because Mattson has failed to show that he was subject to a materially adverse action when he was either issued a matter of record or denied his request for a transfer, Mattson has failed to establish the third element of his *prima facie* case with respect to his internal complaint of harassment. Accordingly, we grant summary judgment in favor of Caterpillar on this aspect of Mattson's retaliation claim.

2.

Mattson also contends that he was retaliated against when he was discharged by Caterpillar after he filed the IDHR charge alleging sexual harassment and retaliation. With respect to this contention, we will assume, without deciding, that Mattson is able to establish a *prima facie* case of retaliation.[6]

As discussed above, even if Mattson establishes a *prima facie* case, his retaliation claim must fail if Caterpillar can articulate a legitimate, non-discriminatory reason for the employment action, and Mattson cannot demonstrate that the articulated reason is pretextual. *Stutler v. Illinois Dep't of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001); *Hilt-Dyson*, 282 F.3d at 466-67. Here, the Company has articulated such a reason. To begin with, the Company was already suspicious that Mattson was bringing false sexual

---

[6] Although we make no findings as to whether Mattson could have established all four of the necessary elements of his *prima facie* case with respect to his filing of the IDHR charge, we note that, unlike the matter of record and denial of request for transfer discussed above, there is no question that Mattson's discharge constitutes an adverse action and that Mattson therefore satisfies the third element of his *prima facie* case. *Crady*, 993 F.2d at 136.

harassment complaints based on, *inter alia*, his statements to the Company that he did not believe Cone was attracted to him and did not know if Cone's breast had touched him "on purpose." Based on this, Caterpillar warned Mattson that bringing a false complaint of harassment could subject him to discipline including discharge. After this warning, Mattson filed another complaint of harassment (the IDHR charge) which he later withdrew at the IDHR hearing. While that charge was pending, the Company conducted an investigation into the charge, which resulted in the production of an affidavit by one of Mattson's coworkers confirming the Company's suspicions that Mattson had falsified his complaints in order to get a supervisor in trouble. Caterpillar asserts that it discharged Mattson on this basis, after having previously warned him that such conduct would lead to discipline including discharge. Accordingly, Caterpillar has articulated a legitimate, non-discriminatory reason for its decision to discharge Mattson.

Because Caterpillar has met its burden of production, Mattson may survive summary judgment only if he demonstrates the pretextual nature of the Company's proffered explanation. Pretext "does not mean a mistake, but 'a phony reason for some action.'" *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 640 (7th Cir. 2001). *See also Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2001) (the court's "only concern is whether the legitimate reason provided by the employer is in fact the true one"). Mattson asserts several reasons as to why Caterpillar's articulated reason for discharging him is pretextual. We find that none of them establish pretext.

Mattson asserts, for instance, that the timing of his discharge (i.e., immediately after the IDHR fact-finding conference) is evidence of pretext. While we question to some extent the Company's decision to discharge Mattson immediately after the conference, we

cannot say that we find such decision to be evidence of pretext, particularly given the Company's explanation that its decision to discharge had been made prior to the fact-finding conference, and only *after* the Company had determined that Mattson had falsified his complaints. Moreover, we note that the Seventh Circuit has made clear that temporal proximity alone does not equate to pretext. See *Sanchez v. Henderson*, 188 F.3d 740, 747 (7th Cir. 1999); *Stone*, 281 F.3d at 644 ("we remind that mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient").

Mattson also asserts that the Company's decision to discipline him prior to its receipt of Hollis' affidavit is evidence of pretext. We again disagree. The facts establish that Caterpillar had already decided, based on its interview with Hollis, to discipline Mattson based on its belief that he had falsified his complaint. Although Hollis acknowledged in his interview that Mattson had not explicitly admitted to him that the complaint was false (as Mattson points out), Hollis explained to the Company why he believed it to be false, and the Company chose to rely on that explanation. The fact that Caterpillar's suspicions were not confirmed until later -- when it received an affidavit from Hollis -- does not, in our opinion, establish that the Company had no basis for deciding to discipline Mattson at this time. In short, we find no evidence to dispute that Caterpillar was merely relying on its own good faith interpretation of Hollis' account when it made the decision to discipline Mattson prior to receiving the affidavit from Hollis.

In reaching the conclusion that Mattson has failed to establish pretext, we note that the critical issue here is not whether Caterpillar was right or wrong in terminating Mattson, but whether it honestly believed in the reason being offered by it for his discharge. In his

attempt to show pretext, Mattson has offered nothing to cast any doubt that Caterpillar did not honestly believe that Mattson had falsified his sexual harassment complaint in an attempt to get rid of Cone. Rather, Mattson's evidence goes merely to the point that Caterpillar may have gotten its facts wrong, e.g., that Caterpillar should not have relied on Hollis. Such evidence does not show pretext, however. See Ransom v. CSC Consulting, Inc., 217 F.3d 467, 471 (7th Cir. 2000) (even employer's reliance on erroneous information to discharge plaintiff is immaterial so long as the employer acted in good faith); see also Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 400 (7th Cir. 1997) (the Court "does not sit as a super-personnel department that reexamines an entity's business decisions").

Since the Court finds that Mattson was discharged not because he filed a charge with the IDHR, but because Caterpillar honestly believed his complaints to be lacking in good faith, Mattson has failed to show by a preponderance of the evidence that Caterpillar's reasons for discharging him are pretextual, i.e., a lie. Accordingly, we find that Caterpillar's motion for summary judgment must be granted.

## CONCLUSION

For the foregoing reasons, we grant Caterpillar's motion for summary judgment and deny Mattson's motion for summary judgment. It is so ordered.

**ENTER:**

*[signature]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:   May 2, 2003**